IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL CASE NO. 2:16-CR-47-ART

UNITED STATES OF AMERICA,                           PLAINTIFF,

v.

WILLIAM MILLER,                                     DEFENDANT.

### SENTENCING MEMORANDUM

Now comes Defendant William Miller, by and through counsel, and respectfully submits the following sentencing memorandum intended to assist this Honorable Court in determining a sentence "sufficient, but not greater than necessary," to fulfill the sentencing purposes set forth in 18 U.S.C. § 3553(a).

Mr. Miller is a committed and devoted husband, father, and grandfather. Mr. Miller is described as a "loving and kind person" with a "strong sense of family." (Pamela Brelsford Letter, Mrs. William Miller Letter). Although Mr. Miller and his ex-wife divorced many years ago, Mr. Miller has always made time for his daughter, Holly Thomas, regardless of where she is living. (Holly Thomas Letter). When Ms. Thomas was younger, Mr. Miller always called, wrote letters, and made time to see her. (Holly Thomas Letter). Ms. Thomas states that she always looked forward to spending time with her dad and she still describes him as her "go-to" person. (Holly Thomas Letter).

Because Mr. Miller is unable to work, he spends much of his time caring for his family. Mr. Miller plays an active role in his grandchildren's lives, helping them with anything from schoolwork to learning how to tie their shoes and ride a bicycle. (Diane Popov Letter). Mr. Miller is also the primary care giver for his mother-in-law, Diane

Popov. Ms. Popov states that she "depend[s] on him for many things to make daily living easier." (Diane Popov Letter). Mr. Miller's wife states that "without Bill here, it is a struggle to get through the days juggling work, home, mom, and the numerous doctor appointments." (Mrs. William Miller Letter).

While Mr. Miller denies committing the offense, this memorandum is neither the time or place to dispute the jury's verdict.  As for the allegations in this case, the facts are not particularly egregious in comparison with similar offenses. The allegations do not include a pattern of searching for or distributing child pornography. There is certainly no allegation of production. There are two instances of alleged emails sending child pornography. The computer records suggest that the person using the computer for sexual gratification spent most of the time talking online with adult women. Further, the records show that the child pornography was not accessed by the computer. Thus, while the jury found Mr. Miller guilty of possessing the child pornography on the external hard drive, the evidence shows that nobody was routinely viewing the files from the external hard drive.

To be sure, possession and distribution of child pornography is a serious offense. However, the seriousness of the offense does not appropriately justify imposing sentences that are routinely disproportionate in that they fail to distinguish among the least and worst offenders. *See e.g., United States v. Stern,* 590 F. Supp. 2d 945, 2008 WL 5273714, *9 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are *fair,* however, not those that simply punish for punishment's sake. There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will

increase if a defendant who deserves a harsh punishment receives a slap on the wrist." (Emphasis in the original; internal citations omitted)).

Across the county, "[t]here is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed." *United States v. Childs*, 976 F. Supp. 2d 981, 982 (S.D. Ohio 2013). "Indeed, approximately 70% of the federal bench considers the current sentencing regime for child pornography possession and receipt cases too severe." *United States v. Marshall*, 870 F. Supp. 2d 489, 490 (N.D. Ohio 2012). This belief is largely due to §2G2.2(b)'s failure to reflect the changes in technology and typical offense conduct that has occurred in recent years. As a result, several of the "specific offense" enhancements—those relating to computer usage, the type and volume of images possessed by offenders, etc.—apply to the vast majority of offenders and result in overly severe penalty ranges for typical or average offenders. As such, the enhancements fail to meaningfully distinguish among offenders in terms of their culpability and the danger they pose to the public.

Sixth Circuit Court of Appeals Judge Merritt recently addressed the excessive nature of punishment in child pornography cases, noting that the Eight Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions, and that justice requires that punishment for a crime must be graduated and proportioned to both the offender and the offense. *United States v. Walters*, 775 F.3d 778, 788 (6th Cir. Ohio 2015) (*Merritt, J, dissenting,* citing *Miller v. Alabama,* 132 S.Ct. 2455 (2012)). Notably, the Sentencing Commission itself has arrived at the conclusion that "the existing sentence scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." United States Sentencing Commission, Report to Congress: Federal Child Pornography Offenses,

at ii (Dec. 2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (last visited May 16, 2018).

Judges nationwide have spoken out against the draconian nature of these guidelines, as reflected in the following opinions compiled by Judge Weinstein in *United States v. R.V.*, 2016 U.S. Dist. LEXIS 7717 (E.D.N.Y. Jan. 21, 2016):

> *United States v. Kelly*, 868 F. Supp. 2d 1202, 1211 (D.N.M. 2012) ("[Defendant]'s advisory Guideline sentence of 87 to 108 months imprisonment is far greater than necessary to punish and deter his conduct and protect the public. This is largely due to serious flaws in U.S.S.G. § 2G2.2, which was not drafted pursuant to the Sentencing Commission's usual expertise, and all too frequently generates unjustly excessive terms of incarceration.")

> *United States v. Price*, No. 09-CR-30107, 2012 U.S. Dist. LEXIS 38397, 2012 WL 966971, at *12 (C.D. Ill. Mar. 21, 2012) ("[C]hild pornography crimes fall within a spectrum. . . . This Court finds that a below-Guideline sentence is needed in this case in order to avoid unwarranted sentencing disparities but also to avoid unwarranted sentencing similarities among defendants convicted of dissimilar conduct.")

> *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009) ("This guideline, thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment. . . . The sentencing court must consider the need to avoid unwarranted similarities among defendants who are not similarly situated, as well as unwarranted disparities among defendants who are similarly situated.")

> *United States v. Marshall*, 870 F. Supp. 2d 489, 491-92 (N.D. Ohio 2012) ("Under the Guidelines, some of the recommended sentences for viewers can, with enhancements, be higher than those for actual predators. . . . In effect, the Guidelines presume that those who view child pornography are indistinguishable from those who actually abuse children.")

> *United States v. Stark*, No. 10-CR-270, 2011 U.S. Dist. LEXIS 12500, 2011 WL 555437, at *7 (D. Neb. Feb. 8, 2011) ("[T]he child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method. . . . Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of

pornography involving children. The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.")

*United States v. Cameron*, No. 09-CR-00024, 2011 U.S. Dist. LEXIS 24878, 2011 WL890502, at *4 (D. Me. Mar. 11, 2011) ("[Defendant] is subject to nearly a ten-fold greater punishment for possessing images of someone else sexually abusing a minor than he would receive if he had committed the actual abuse himself.")

*United States v. Cruikshank*, 667 F. Supp. 2d 697, 702 (S.D. W. Va. 2009) ("There is nothing redeeming or even understandable about this crime. But judges must objectively consider whether the sentences imposed further the goals of punishment. To do so, we must differentiate between those who create child pornography and those who consume it. . . . In an instance of troubling irony, an individual who, sitting alone, obtained images of sexually exploited children on his computer, could receive a higher sentence than the Guidelines would recommend for an offender who actually rapes a child.")

*United States v. Grober*, 595 F. Supp. 2d 382, 393 (D.N.J. 2008), aff'd, 624 F.3d 592 (3d Cir. 2010) ("§ 2G2.2 leads to a sentence that is too severe in a downloading case. Surely congress did not intend to provide a sentencing range of 19 1/2 to 20 years for a typical downloader . . . Aside from overly punitive sanctions for a first offender, the guidelines sentence for a typical downloader squelches the ability of a judge to depart upward. The bottom line is that the skewed focus in § 2G2.2 on content and the strained application to conduct . . . lead to a vision whereby the predator becomes indistinguishable from the voyeur.").

Societal norms also reflect the overly harsh nature of the sentencing guidelines for child pornography. In *United States v. Collins*, the Sixth Circuit recognized that "juries ... can provide insight into the community's view of the gravity of an offense." 828 F.3d 386, 390 (6th Cir. 2016). The defendant in *Collins* was convicted by a jury of both receipt and possession of child pornography. After the jury returned their verdict, Judge James S. Gwin took the unusual step of polling the jurors to get an idea of what the community sentiment regarding an appropriate sentence for the defendant might be. The judge gave them a one question questionnaire, asking each individual juror, "State what you believe

an appropriate sentence is." At the defendant's sentencing, Judge Gwin shared the results with the parties:

> And so, as you can see, the median sentence, which is probably the better reflection of what . . . is probably a better reflection as to what community sentiment is. **The jurors who actually heard this case and actually saw the images recommended a sentence of eight months.**

*United States of America v. Collins,* 5:14-cr-00279-JG-1 (emphasis added).[1] The court went on to say that while the jurors' recommended sentence was "not in any way controlling, I think it does reflect the – how off the mark the Federal Sentencing Guidelines are... these were people drawn from cross section of our community; if anything, what one would consider a more conservative cross section of our community, and they, nonetheless, recommend a sentence that's just a fraction of what the Guidelines recommend." *Id.*

Mr. Miller's case is yet another example of how the application of child pornography sentencing guidelines can transform an offender with a criminal history score of zero into one of the worst federal offenders in terms of his offense level. The "Guideline Sentence" assessed by the United States Probation Department in this case would call for a prison term of between 210 to 262 months despite the fact that Mr. Miller has zero criminal history points and the nature and circumstances of his case are not particularly egregious. Rather, Mr. Miller's adjusted offense level of 37 resulted from his allegations of non-contact conduct committed by clicking buttons on a computer keyboard. While child pornography is a heinous crime and its seriousness should not be

---

[1] *See* Transcript of Sentencing Proceedings (electronically filled February 22, 2015 at docket number 36, in *United States of America v. Collins,* 5:14-cr-00279-JG-1, U.S. District Court Northern District of Ohio (Akron)).

minimized, a sentence in Mr. Miller's advisory guideline sentencing range would be disproportionately harsh to his conduct and criminal history. Accordingly, a sentence between 210 to 262 months would be far greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## **CONCLUSION**

Regarding restitution, Mr. Miller requests this Court set restitution pursuant to *Paroline v. United States*, 134 S. Ct. 1710, 1715 (2014) ("[W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in her images where it is impossible to trace a particular amount of those losses to the individual defendant utilizing a more traditional causal inquiry, a court should order restitution in an amount that comports with the defendant's relative role in the actual causal process underlying the victim's general losses.").

For the reasons stated above, Defendant William Miller respectfully requests that this Court sentence him to a reasonable sentence much closer to the mandatory minimum of 5 years than the unreasonable range suggested by the flawed Guidelines. Mr. Miller suffers from poor health and a lengthy prison term would likely be a *de facto* life sentence. This Court can fashion supervised release in a manner to alleviate any concerns related to Mr. Miller in the future. In fact, he was supervised without any issues by the federal probation department for a lengthy period during the pendency of this case, which exhibits his ability to comply with conditions such that the community is safe.

Respectfully submitted,

/s/ Eric G. Eckes
ERIC G. ECKES

Pinales, Stachler, Young, Burrell & Crouse Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2723
(513) 252-2751 (fax)
eeckes@pinalesstachler.com


**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the foregoing document was provided via the

Court's electronic filing system upon the parties of record, on the 18th day of May, 2018.

/s/ Eric G. Eckes_____
Eric G. Eckes